[Cite as *State v. Carty*, 2018-Ohio-2739.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 106218 and 106302

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### PHILIP J. CARTY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-617208-A and CR-17-613832-A

**BEFORE:** Kilbane, P.J., Stewart, J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 12, 2018

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Jennifer King
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} In this consolidated appeal, defendant-appellant, Philip Carty ("Carty"), appeals from his guilty plea and no contest plea in two separate cases. For the reasons set forth below, we affirm.

{¶2} In February 2017, Carty, a Navy veteran, was charged in Case No. CR-17-613832-A with the following two counts: Count 1 charged him with operating a vehicle while under the influence ("OVI"), with a specification that Carty has been convicted or pled guilty to five or more equivalent offenses within the previous 20 years; and Count 2 charged Carty with failure to comply. These charges arose from a traffic stop in Berea, Ohio.

{¶3} While out on bail, Carty was arrested by North Royalton Police after he failed field sobriety tests administered during a traffic stop on May 4, 2017. Subsequently, Carty was charged in Case No. CR-17-617208-A with two counts. Count 1 charged him with OVI, which carried a furthermore specification stating that he had a prior OVI conviction; and Count 2 charged him with failure to comply.

{¶4} Trial for CR-17-613832-A was set for May 17, 2017. On May 10, 2017, a hearing was held where the state put on the record its plea offer. In exchange for a guilty plea to Count 1, a third-degree felony OVI, the state would nolle Count 2. The state also notified the court that Carty received another OVI a few days prior to that hearing. The court continued the matter to May 17, 2017, so that defense counsel could determine if the cases could be combined.

{¶5} At the outset of the hearing on May 17, 2017, defense counsel stated that a probation officer had advised Carty the day before that he could apply to Veterans Treatment Court. Defense counsel then requested that the matter be transferred to veterans court. The state objected because it was the day of trial. The trial court denied Carty's request, and the matter proceeded to a plea hearing. The trial court conducted its Crim.R. 11 colloquy, accepted Carty's

guilty plea, and found him guilty of OVI as charged in the indictment. The trial court nolled Count 2. The court then referred Carty for a presentence investigation report.

{¶6} The trial court reconvened in August 2017, at which time it addressed both of Carty's cases. At the hearing, Carty entered a no contest plea in CR-17-617208-A. Carty was assigned the public defender's office to represent him in that case. Carty was represented by different counsel in CR-17-613832-A.

{¶7} As the trial court conducted its Crim.R. 11 colloquy with regard to Case No. CR-17-617208-A, the court had an off-the-record discussion with the attorneys involved. The court then returned to the record and stated:

> The Court took a recess to review the penalties for the charges of which the defendant has been indicted in Case Number 617208 and 613832 * * * and has conducted research on the potential penalties in light of the indictment in each case.
>
> So based on that, I am going to re-plea the defendant in Case Number 613832 to ensure that he has been properly advised of all of the penalties involved prior to him pleading guilty. And then in 617208, my understanding is he's going to enter a plea of no contest. So I will re-plea him in 613832 and plea him in 617208 and then go to sentencing. So I will take the pleas prior to the sentencing.

{¶8} Defense counsel in each case did not object, and the trial court proceeded with its Crim.R. 11 colloquy. The state then outlined the potential penalty involved in pleading guilty to Count 1 (third-degree felony OVI, with the added specification) in CR-17-613832-A. The state explained that the sentence was 60 days up to 36 months, plus one, two, three, four, or five years of prison to be served prior and consecutive to any of the third-degree penalties or fourth-degree penalties. With regard to CR-17-617208-A, the stated explained that the penalty for Count 1 (third-degree felony OVI, with a furthermore clause) was 60 days up to 36 months and 6 to 18 months on Count 2 (failure to comply), which must be served consecutive to any other penalty.

The trial court informed Carty of the fines associated with both cases. The trial court accepted Carty's pleas and found him guilty.

**{¶9}** The trial court then sentenced Carty in both cases to a total of seven years in prison. In CR-17-613832-A, the trial court sentenced Carty to two years on Count 1, to be served consecutive to the two-year sentence on the specification, for a total of four years in prison. The court ordered that the sentence in that case be served consecutive to the sentence in CR-17-617208-A. In CR-17-617208-A, the trial court sentenced Carty to two years in prison on Count 1 and one year in prison on Count 2, to be served consecutively, for an aggregate of three years in prison. The trial court also ordered Carty to pay a $2,000 fine and imposed a 15-year driver's license suspension in each case.

**{¶10}** Carty now appeals, raising the following three assignments of error for review.

### Assignment of Error One

The trial court violated [Carty's] federal and state constitutional rights to due process of law and Crim.R. 11 when it accepted [Carty's] pleas.

### Assignment of Error Two

[Carty] was deprived of his federal and state constitutional rights to effective assistance of counsel.

### Assignment of Error Three

The trial court erred in denying [Carty's] motion to transfer his case to Veterans Court.

### Pleas

**{¶11}** In the first assignment of error, Carty argues the court violated his constitutional rights and Crim.R. 11 when it accepted his pleas. Carty claims the trial court did not strictly comply with its duties under Crim.R. 11 at the August 3, 2017 hearing and the court's actions at

that hearing rendered his plea in CR-17-613832-A invalid.

{¶12} When a defendant enters a plea in a criminal case, the plea must be knowingly, intelligently, and voluntarily made. "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450, citing *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991); Crim.R. 11(C). Crim.R. 11(C)(2) governs the acceptance of guilty and no contest pleas in felony cases. It provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

*Id.*

{¶13} The underlying purpose of Crim.R. 11(C) is to convey information to the defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead. *State*

*v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). The standard of review we must apply for compliance with the requirements set forth in Crim.R. 11(C) is de novo. *State v. Darling*, 8th Dist. Cuyahoga No. 104517, 2017-Ohio-7603, ¶ 17, citing *State v. Roberts*, 8th Dist. Cuyahoga No. 89453, 2010-Ohio-3302, ¶ 19, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C). *Id.*

{¶14} In determining whether the trial court has satisfied its duties under Crim.R. 11(C)(2), reviewing courts distinguish between constitutional rights and nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-21. The trial court must strictly comply with the requirements of Crim.R. 11(C)(2)(c) relating to the waiver of constitutional rights. *Id.* at ¶ 18. _In *Veney*, the Ohio Supreme Court enumerated the following five constitutional rights set forth in Crim.R. 11(C)(2)(c) as: (1) the right to a jury trial; (2) the right to confront one's accusers; (3) the privilege against compulsory self-incrimination; (4) the right to compulsory process to obtain witnesses; and (5) the right to require the state to prove guilt beyond a reasonable doubt. *Id.* at ¶ 19.

{¶15} Under the strict-compliance standard set forth, the trial court must orally inform the defendant of the rights set forth in Crim.R. 11(C)(2)(c) during the plea colloquy for the plea to be valid. "Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant." *Id.* at ¶ 29. When_ the record demonstrates that the trial court failed to perform this duty, the defendant's plea is constitutionally infirm, making it presumptively invalid. *Id.* at ¶ 29, *Ballard*; *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51.

{¶16} As to the nonconstitutional aspects of Crim.R. 11(C)(2)(a) and (b), "substantial compliance" is sufficient. *Id.* at ¶ 14. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977); *State v. Carter*, 60 Ohio St.2d 34, 396 N.E.2d 757 (1979). "'[I]f it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance.'" *State v. Thomas*, 8th Dist. Cuyahoga No. 94788, 2011-Ohio-214, ¶ 13, quoting *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995).

{¶17} A defendant must show prejudice before a plea will be vacated for an error involving Crim.R. 11(C)(2) when nonconstitutional aspects of the colloquy are at issue. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 17. To demonstrate prejudice in this context, the defendant must show that the plea would not have otherwise been entered. *Id.* at ¶ 15, citing *Nero*.

{¶18} With regard to his constitutional rights, Carty contends the trial court did not inform him that he has the right to "compulsory process." A review of the record in both cases, however, reveals that the trial court did in fact advise Carty of his right to "compulsory process." In both cases, the trial court advised:

> THE COURT: Do you understand that you have the right to confront and cross-examine witnesses the State must bring forth at such a trial?
>
> [CARTY]: I do, Your Honor.
>
> THE COURT: Do you understand that you have the right to subpoena witnesses to testify in your favor at a trial?
>
> [CARTY]: Yes, I do, Your Honor.

{¶19} This court has previously found that the trial court strictly complied with Crim.R. 11(C) by informing the defendant that witnesses could be "forced," "subpoenaed," "compelled," "summoned," or "required" to appear. *State v. Rosenberg*, 8th Dist. Cuyahoga No. 84457, 2005-Ohio-101, ¶ 14, citing *State v. Cummings*, 8th Dist. Cuyahoga No. 83759, 2004-Ohio-4470; *State v. Wilson*, 8th Dist. Cuyahoga No. 82770, 2004-Ohio-499; *State v. Senich*, 8th Dist. Cuyahoga No. 82581, 2003-Ohio-5082; *State v. Gurley*, 8th Dist. Cuyahoga No. 70586, 1997 Ohio App. LEXIS 2414 (June 5, 1997); *State v. Huff*, 8th Dist. Cuyahoga No. 70996, 1997 Ohio App. LEXIS 1879 (May 8, 1997).

{¶20} The language used by the trial court in the instant case was sufficient to inform the defendant of his constitutional right of compulsory process. Therefore, we find that the trial court properly informed Carty of his right to compulsory process.

{¶21} With regard to his nonconstitutional rights, Carty first contends the trial court did not ensure that he was thinking clearly in the absence of his prescription medication. In the instant case, Carty advised the trial court that he was unable to obtain his prescription medication while in jail because it was not offered. He tried three different medications that had adverse effects and did not provide him with any relief. Carty stated that he was not under any medication at the August 2017 hearing.

{¶22} We note that

> [t]he mere fact that a defendant suffered from a mental illness or was taking psychotropic medication under medical supervision when he entered a guilty plea is not an indication that his plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting the defendant's guilty plea.

*State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 16, citing *State v.*

*Robinson*, 8th Dist. Cuyahoga No. 89136, 2007-Ohio-6831; *State v. Harney*, 8th Dist. Cuyahoga No. 71001, 1997 Ohio App. LEXIS 1768 (May 1, 1997); *State v. Bowen*, 8th Dist. Cuyahoga Nos. 70054 and 70055, 1996 Ohio App. LEXIS 5612 (Dec. 12, 1996); *State v. McDowell*, 8th Dist. Cuyahoga No. 70799, 1997 Ohio App. LEXIS 113 (Jan. 16, 1997); *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48._ A trial court may determine that a defendant understands his plea "by considering the surrounding circumstances such as the dialogue between the court and the defendant and the defendant's demeanor." *McDowell* at *4, citing *State v. Swift*, 86 Ohio App.3d 407, 411, 621 N.E.2d 513 (11th Dist.1993).

{¶23} A review of the plea colloquies in the instant case reveals that Carty indicated he understood the trial court. He participated in a reasonably intelligible dialogue with the trial court. As a result, we find the trial court substantially complied with its duties under Crim.R. 11(C).

{¶24} Carty next claims the court never informed him during the plea hearing about the possible sentence he could receive in CR-17-613832-A. With regard to that case, Carty was incorrectly advised of his possible sentence at his May 2017 plea hearing. The trial court realized the error at the August 2017 hearing and conducted a new plea. The court stated:

> The Court took a recess to review the penalties for the charges of which the defendant has been indicted in Case Number 617208 and 613832 * * * and has conducted research on the potential penalties in light of the indictment in each case.
>
> So based on that, I am going to re-plea the defendant in Case Number 613832 to ensure that he has been properly advised of all of the penalties involved prior to him pleading guilty. * * * So I will re-plea him in 613832[.]

{¶25} Defense counsel did not object, and the trial court proceeded with its Crim.R. 11 colloquy. The court advised Carty of the potential penalty involved in pleading guilty to Count

1 (third-degree felony OVI, with the added specification) in CR-17-613832-A. The court stated the sentence was "60 days of prison up to 36 months that must be run consecutive to Count 2." As a result, we find the trial court sufficiently advised Carty of his possible sentence.

**{¶26}** Carty additionally claims the court did not inform him of the effects of pleading no contest in CR-17-617208-A. He contends that no showing of prejudice was required to invalidate his plea because the trial court completely failed to advise him that a no contest plea is not an admission of guilt, but rather an admission of truth of the facts alleged in the complaint.

**{¶27}** "Crim.R. 11(C)(2)(b) requires that a defendant be informed of and understand the effect of a no contest or guilty plea; it does not require a 'rote recitation' of the language of Crim.R. 11(B)(2)." *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 18, citing *State v. Mallon*, 11th Dist. Trumbull No. 98-T-0032, 1999 Ohio App. LEXIS 6131 (Dec. 17, 1999). Furthermore, with respect to a defendant's right to be informed of and understand the effect of a no contest or guilty plea — unlike other nonconstitutional aspects of Crim.R. 11(C)(2) — "it is presumed that a defendant who has entered a no contest or guilty plea without asserting actual innocence understands the effects of his or her plea." *Id.*

**{¶28}** In the instant case, while the trial court did not recite the language of Crim.R. 11(C)(2)(b), the court did inform Carty of the nature of the charges, the potential penalties he faced and the constitutional rights he was giving up by pleading no contest to the charge in the indictment, including his right to a jury or bench trial, his right to continued representation by counsel through trial, his right to compel witness testimony on his behalf, his right to confront and cross-examine any witnesses that would be called to testify against him and his right not to testify at his trial if he chose not to do so. The trial court further advised Carty that by entering his no contest plea, he was giving up his right to have "the State prove [him] guilty beyond a

reasonable doubt at a trial." Carty stated that he understood the offenses to which he was pleading no contest and all the rights he was waiving by pleading no contest.

> **{¶29}** Based on the foregoing, the record reflects that Carty was both advised of the
>
> "essence" of his no contest plea, i.e., that he was permitting the trial court to find him guilty without the opportunity to present a defense, and the negative effects of his no contest plea, i.e., that "he could be found guilty without going through a trial and that he would be waiving all of his Constitutional trial rights."

*Musleh*, quoting *State v. Ramey*, 7th Dist. Mahoning No. 13 MA 64, 2014-Ohio-2345, ¶ 19. Moreover, Carty who was represented by counsel at the plea hearing, did not assert his innocence at the plea hearing and there is nothing in the record that suggests that Carty was confused or did not understand that his no contest plea was an admission of the truth of the facts alleged in the indictment. There has been no showing that Carty suffered any prejudice as a result of the trial court's failure to fully comply with Crim.R. 11(C)(2)(b). Where, as here, "a defendant enters a guilty or no contest plea without asserting actual innocence, a defendant is presumed to understand the effect of the plea such that a trial court's failure to inform the defendant of the effect of his plea is presumed not to be prejudicial." *Musleh* at ¶ 24. Therefore, considering the presumption that applies and the totality of the circumstances, we find that the trial court at least partially complied with the "effect-of-plea" requirement under Crim.R. 11(C)(2)(b). *Id.* at ¶ 23.

> **{¶30}** Accordingly, the first assignment of error is overruled.

Ineffective Assistance of Counsel

> **{¶31}** In the second assignment of error, Carty argues defense counsel in CR-17-613832-A was ineffective for: (1) not withdrawing representation after Carty was arrested for another OVI in a municipality where defense counsel serves as assistant prosecutor; (2) "encouraging" Carty to plea even though he misadvised Carty that the maximum sentence he

could get was "36 months"; and (3) not moving the trial court to waive the fines and not filing an affidavit of indigence.

**{¶32}** In order to establish ineffective assistance of counsel, Carty must demonstrate that: (1) counsel's performance fell below an objective standard of reasonable representation, and (2) he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**{¶33}** In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

**{¶34}** We do not find a conflict of interest with the representation of defense counsel in CR-17-613832-A. That case concerned Carty's arrest in Berea, not the city of North Royalton where defense counsel is an assistant prosecutor. Carty was represented by different counsel in the North Royalton case. Therefore, no conflict of interest exists.

**{¶35}** We further find Carty cannot demonstrate that but for counsel telling him the maximum sentence was 36 months in May 2017, he would not have entered a plea of guilty. Carty repled in CR-17-613832-A in August 2017. At that time, he was informed of the correct maximum possible sentence before entering the plea again. As a result, Carty was not prejudiced by counsel's statement that "the maximum sentence was 36 months."

{¶36} With regard to the mandatory fine, Carty argues there was a reasonable probability that the court would have found him indigent if an affidavit had been filed.

{¶37} This court has held that the failure to file an affidavit of indigency only constitutes ineffective assistance of counsel when the record shows a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed. *State v. Hubbard*, 8th Dist. Cuyahoga No. 99093, 2013-Ohio-1994, ¶ 9, citing *State v. Gilmer*, 6th Dist. Ottawa No. OT-01-015, 2002-Ohio-2045; *State v. Huffman*, 8th Dist. Cuyahoga No. 63938, 1995 Ohio App. LEXIS 233 (Jan. 26, 1995); *State v. Powell*, 78 Ohio App.3d 784, 605 N.E.2d 1337 (3d Dist.1992); *State v. Parsley*, 10th Dist. No. 09AP-612, 2010-Ohio-1689.

{¶38} In the instant case, Carty retained and was represented by private counsel from the outset of his case, up to and including sentencing. While Carty was found indigent for purposes of this appeal and was appointed counsel in his other case, "'[a]n offender's indigency for purposes of receiving appointed counsel is separate and distinct from his or her indigency for purposes of avoiding having to pay a mandatory fine.'" *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 93 (3d Dist.), quoting *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 79 (10th Dist.), citing *State v. Gipson*, 80 Ohio St.3d 626, 631-633, 1998-Ohio-659, 687 N.E.2d 750 (1998); *see also State v. Tribune*, 12th Dist. Warren No. CA2016-04-027, 2017-Ohio-1407, ¶ 11, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 35. As there is no evidence to suggest a "reasonable probability" that the trial court would have found Carty indigent and unable to pay the fine, we cannot say that Carty received ineffective assistance of counsel on this issue.

{¶39} Accordingly, the second assignment of error is overruled.

Veterans Treatment Court

**{¶40}** In the third assignment of error, Carty argues that the trial court should have granted his motion to transfer his case to Veterans Treatment Court.

**{¶41}** Loc.R. 30.3 of the Cuyahoga County Court of Common Pleas, General Division states in pertinent part:

(A) Purpose. The Veterans Treatment Court is established for defendants * * * who served in the United States Armed Forces. Hereafter, defendant(s) refers to such individuals. The Veterans Treatment Court is committed to providing community services that seek to develop self-sufficiency, reduce recidivism, promote public safety, and provide alternatives to incarceration. To accomplish these purposes, the Veterans Treatment Court will utilize the shared military experience of other veterans to assist these defendants. The Veterans Treatment Court will work closely with the Veterans Administration (VA) and other agencies to accomplish these purposes.

* * *

(C) Eligibility. A defendant is eligible for transfer to the Veterans Treatment Court when charged with a felony described in paragraph (D), provided the defendant presents evidence of military service with military form DD 214.

* * *

(D) Permitted Felonies. Any felony offense for which a defendant may receive a sentence of community control sanctions (CCS) makes that defendant eligible to transfer to the Veterans Treatment Court, subject to the approval of the Veterans Treatment Court Judge. * * * At any point after arraignment, a defendant *may* be referred to the Veterans Treatment Court, but when a defendant is convicted of or pleads to a felony of the first or second degree, or of the third degree that is subject to high tier sentencing under R.C. 2929.14(A)(3), the assigned Judge shall sentence the defendant before transfer to the Veterans Treatment Court.

* * *

(F) Procedure for Admission. _ A defendant must enter into a Participation Agreement with the Veterans Treatment Court; must undergo a clinical and administrative assessment to determine eligibility; and must be approved by the Veterans Treatment Court Judge.

(G) Effective of Transfer.   When a case is transferred to the Veterans Treatment Court, the Veterans Treatment Court Judge shall acquire full jurisdiction over that transferred case.   If a defendant is found ineligible or is not approved for Veterans Treatment Court, the transfer shall not be completed and the case shall be returned to the docket of the original assigned Judge.

(Emphasis added.)

{¶42} As an initial matter, we note that the case law in this area is sparse.  It is well known that veterans, such as Carty, often suffer from mental illness and substance abuse problems as a result of their experiences serving in the armed forces.  Indeed, "[i]t is an unfortunate truth that many veterans return to civilian life with significant physical and mental traumas that often contribute to their involvement in the criminal justice system."  *Ohio v. Dunne*, 8th Dist. Cuyahoga No. 100460, 2014-Ohio-3323, ¶ 10 (Frank D. Celebrezze, Jr. J., concurring).   The goal of Veterans Treatment Court is for veterans to have law-abiding lives.

{¶43} In the instant case, a review of the record reveals that at the hearing on May 17, 2017, defense counsel in CR-17-613832-A stated that the day before, a probation officer advised Carty that he could apply to Veterans Treatment Court.   Defense counsel then requested that the matter be transferred to veterans court.   The state objected because it was the day of trial.   The trial court denied Carty's request, and the matter proceeded to a plea hearing.   At the August hearing, the issue of transfer was not brought to the court's attention by either party.   The trial court then proceeded with the plea hearing in CR-17-617208-A and replea in CR-17-613832-A.

{¶44} While we are most supportive of the purposes of the Veterans Treatment Court, the local rule does not provide for a mandatory transfer.   Carty has lengthy record of alcohol-related offenses, which includes several OVI's and he was subject to mandatory prison time.   Thus, based on the foregoing, we cannot say the trial court abused its discretion when it denied Carty's request for a transfer.

**{¶45}** Accordingly, the third assignment of error is overruled.

**{¶46}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
KATHLEEN ANN KEOUGH, J., CONCUR